# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RONALD OWENS, JR.,

                Petitioner,                    Case No. 15-cv-13264
                                                  Hon. Matthew F. Leitman

v.

SHERMAN CAMPBELL,

                Respondent.

_____/

## OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1), (2) DENYING A CERTIFICATE OF APPEALABLITY, AND (3) GRANTING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

A habeas petitioner seeking a writ of habeas corpus on the basis that the evidence supporting his conviction was insufficient faces a very steep burden. That is because a federal district court reviewing an insufficiency of the evidence claim is "bound by two layers of deference to groups who might view facts differently" – the state court fact finder (most often the state court trial jury) and the state appellate court that reviewed the sufficiency of the evidence on direct appeal. *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009).

Petitioner Ronald Owens, Jr. ("Ronald")[1], is the rare habeas petitioner whose insufficiency of the evidence claim clears both layers of deference. Two of Ronald's state-court convictions – for assault with intent to do great bodily harm less than murder and for conspiracy to commit assault with intent to do great bodily harm less than murder – are not supported by sufficient evidence. The jury had no basis on which to find Ronald guilty of those offenses beyond a reasonable doubt, and the state appellate court's decision finding sufficient evidence to support those convictions involved an unreasonable application of clearly-established federal law. Indeed, Respondent makes no serious effort to defend either the jury's verdict or the state appellate court's ruling on those claims. Instead, Respondent contends – incorrectly – that Ronald's insufficiency of the evidence claim is not properly before this Court because Ronald did not present it to the state appellate court. That contention is demonstrably wrong. For the reasons explained below, the Court vacates Ronald's assault and conspiracy convictions.

Ronald was convicted of the additional offenses of (1) bribing, intimidating, or interfering with a witness in a criminal case and (2) inciting or procuring one to commit perjury. For the reasons explained below, the Court rejects his challenges

---

[1] The Court does not ordinarily refer to parties by their first names. But three of the key figures in this case share the last name "Owens," and the facts are easier to understand when these individuals are identified by their first names.

to those convictions.  And with those convictions intact, Ronald must still serve a substantial prison sentence.

Because Ronald is entitled to relief on two of his claims, the Court will **GRANT IN PART** and **DENY IN PART** Ronald's petition for a writ of habeas corpus (ECF No. 1).

**I**

**A**

Ronald is a state prisoner in the custody of the Michigan Department of Corrections.  He stands convicted of four crimes:  conspiracy to commit assault with intent to do great bodily harm less than murder, Michigan Compiled Laws § 750.84, assault with intent to do great bodily harm less than murder, Michigan Compiled Laws § 750.84, bribing, intimidating, or interfering with a witness in a criminal case, Michigan Compiled Laws § 750.122(7)(b), and inciting or procuring one to commit perjury, Michigan Compiled Laws § 750.425.  The state trial court sentenced Ronald to 83 months to 15 years imprisonment the conspiracy to commit assault with intent to do great bodily harm less than murder conviction, 5 to 15 years imprisonment for the assault with intent to do great bodily harm less than murder conviction, 83 months to 15 years imprisonment for the bribing, intimidating, or interfering with a witness in a criminal case conviction, and 60 to 90 months imprisonment for the inciting or procuring one to commit perjury conviction.  The sentence for the bribing,

intimidating, or interfering with a witness in a criminal case conviction was imposed consecutive to the sentences for the other convictions (which all run concurrent to one another).

**B**

Ronald stood trial in state court with his brother Steven Owens ("Steven") as his co-defendant. The charges against them arose from the non-fatal shooting of Cornelius Owens ("Cornelius") – no relation to Ronald or Steven. The prosecution contended that Ronald and Steven (1) arranged for a man named Dyterius Roby ("Roby") to shoot Cornelius and (2) attempted to induce Cornelius not to identify Roby as the shooter.

The Michigan Court of Appeals further explained the circumstances leading to the convictions as follows:

> Cornelius Owens (Cornelius) was shot twice in the legs on April 24, 2009. Cornelius and another witness-Maurice Harris-identified the shooter as Dyterius Roby, although Cornelius believed defendants were behind the shooting. The prosecution presented evidence that in February 2009, a drug raid occurred at Ronald's residence, and the police confiscated drug residue and paraphernalia, and approximately $60,000 hidden in air vents throughout the home. At a subsequent drug raid at Ronald's residence in November, the police found a substantial amount of crack cocaine, $2,100 hidden in the walls, and drug packaging material.
>
> Cornelius, a member of the same gang as defendants, participated in a DVD called "Prison Talk" in which he referenced certain gang affiliations and spoke negatively

about the defendants. After the February drug raid and the DVD, Cornelius began to hear rumors that defendants thought he was the snitch that led to the raid. Cornelius claimed that Steven called him a snitch and Ronald yelled out "don't speak to the wire," which again was a reference to Cornelius being a "snitch," "rat" or the "police." About a week before the shooting, Cornelius confronted the defendants at a fish fry. Cornelius and other men pointed guns at the defendants, but the confrontation deescalated with no shots fired.

After Cornelius was shot, he eventually identified Roby as the shooter. Yet, Cornelius testified that both Ronald and Steven approached him and offered him money and cocaine to recant his identification. Cornelius met with Roby's attorney and did as defendants asked, but after speaking with the police again, Cornelius admitted to the perjury scheme. A taped telephone call with Steven was admitted at trial, in which Steven discussed the scheme with Cornelius.

Steven was convicted of conspiracy to assault with intent to do great bodily harm less than murder, solicitation to assault with intent to do great bodily harm less than murder, assault with intent to do great bodily harm less than murder, bribing, intimidating, or interfering with a witness in a criminal case, and inciting or procuring one to commit perjury. Ronald was convicted of conspiracy to assault with intent to do great bodily harm less than murder, assault with intent to do great bodily harm less than murder, bribing, intimidating, or interfering with a witness in a criminal case, and inciting or procuring one to commit perjury.

*People v. Owens,* 2014 WL 1401932, ** 1-2 (Mich. Ct. App. Apr. 10, 2014).

## C

Ronald filed an appeal of right in the Michigan Court of Appeals. He raised eight claims through counsel and eight additional claims in a *pro per* supplemental brief. The Michigan Court of Appeals affirmed his convictions. *See id.*

Ronald then filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *See People v Owens*, 856 N.W.2d 10 (Mich. 2014).

Ronald next filed the habeas corpus petition that is now before this Court. (*See* Pet., ECF No. 1.) The Court thereafter stayed these proceedings to allow Ronald to exhaust in the state court an additional claim challenging his sentence based upon the Michigan Supreme Court's decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). (*See* Mot. to Stay, ECF No. 15; Order Granting Mot. to Stay, ECF No. 16.)

On March 16, 2017, the state trial court denied Ronald's motion for relief from judgment on his *Lockridge* claim. The Michigan Court of Appeals then dismissed Ronald's application for leave to appeal for "failure to pursue the case in conformity with the rules." *People v. Owens*, No. 340153 (Nov. 8, 2017). (*See* ECF No. 17, PageID.2753.)

On January 26, 2019, this Court granted Ronald's motion to reactivate the petition. (*See* Order, ECF No. 18.)

## D

In the petition, Ronald brings the following claims for relief:

I.    Petitioner was denied his state and federal constitutional due process right to a fair trial by the trial court's refusal to grant a mistrial based on the prosecutor's continued insertion of irrelevant prior bad acts and evidence of gang involvement, drug dealing, and arson.

II.    Petitioner was denied his state and federal constitutional right to a fair trial as a result of the trial court's refusal to grant the defense request for a mistrial based upon prosecutorial misconduct.

III.    The trial court erred by failing to disqualify the Saginaw County Prosecutor's Officer.

IV.    The trial court erred by refusing to strike the admission of Officer Ball's cell-phone tower testimony.

V.    The trial court erred in denying Petitioner's motion for directed verdict.

VI.    The verdict was against the great weight of the evidence.

VII.    The trial court's errors resulted in cumulative error.

VIII.    The trial court violated Petitioner's due process rights at sentencing by misscoring Offense Variables 3, 4, 10, 13, 14, and 19 of the sentencing guidelines.

IX. Petitioner was denied his due process right to a fair trial due to ineffective assistance of counsel.

X. The court abused its discretion when it denied Petitioner's motion to quash.

XI. Petitioner's conviction of several offenses violates the Double Jeopardy Clause.

XII. Petitioner's conviction of the lesser included offense prohibits a charge under section (7) subdivision (B) of the bribery statute.

XIII. Petitioner was denied his due process right to a fair trial due to police misconduct when investigating police threatened or intimidated witnesses.

XIV. Petitioner was denied his due process right to a fair trial by the knowing use of false and perjured testimony.

XV. The trial court erred by giving the jury instruction of the lesser included offense to conspiracy to commit first-degree murder for an offense that does not exist.

XVI. Conspiracy to commit first-degree murder does not include a lesser offense of conspiracy to commit second-degree murder.

XVII. Petitioner's convictions must be reversed because the prosecution failed to present sufficient evidence to satisfy the due process standard of guilt beyond a reasonable doubt.

(Pet., ECF No. 1.)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the

state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

Ronald argues that he is entitled to federal habeas relief on his convictions for assault with intent to do great bodily harm less than murder and for conspiracy to commit assault with intent to do great bodily harm because they were not supported by sufficient evidence. (*See* Pet., ECF No. 1.) The Court agrees.

## A

Before turning to the merits of Ronald's insufficiency of the evidence claims, the Court addresses Respondent's contention that Ronald may not present these claims for review here because he did not raise them in state court. (*See* Answer, ECF No. 11, PageID.2652-2653.) That is Respondent's only real response to these claims; Respondent never addresses the merits of the claims.[2]

---

[2] Respondent makes only a single, passing reference to the merits of Ronald's sufficiency of the evidence claims in a footnote:

Respondent argues that, in state court, Ronald raised only *state-law* challenges to the sufficiency of the evidence supporting his conspiracy and assault convictions and that Ronald did not challenge those convictions based on the insufficiency of the evidence under *federal constitutional* law. (*See id*.) As support for this argument, Respondent highlights that Ronald argued to the state appellate court that the trial court erred when it denied his "motion for directed verdict" on the claims. Respondent contends that a "motion for directed verdict" is solely a matter of state law and that when Ronald challenged the denial of the "directed verdict" motion before the state appellate court, he did not raise a federal sufficiency of the evidence challenge. The Court disagrees.

The record indisputably demonstrates that Ronald challenged the sufficiency of the evidence on federal constitutional grounds in state court even though he used the term "directed verdict." Indeed, Ronald's counsel on direct appeal cited the Due Process Clause of the United States Constitution and the United States Supreme

---

> But even if [Ronald] was raising insufficient-evidence claims as to all of his convictions – a point the State in no way concedes – those claims would lack merit for the more-detailed reasons set forth by the prosecutor on appeal.

(Answer, ECF No. 11 at n.15, PageID.2699-2700.) The "reasons set forth by the prosecutor" were essentially the same "reasons" that the Michigan Court of Appeals found sufficient evidence to support the conspiracy and assault convictions. (*See* State Prosecutor's Brief on Appeal, ECF No. 10-37, PageID.2369-2372.)

Court's decision construing that clause in *Jackson v. Virginia*, 443 U.S. 307 (1980), as the law governing Ronald's insufficiency of the evidence claim. (*See* Ronald's App. Brief, ECF No. 10-37, PageID.2180.)  Ronald likewise cited United States Supreme Court's decisions concerning the federal constitutional test for the sufficiency of the evidence in his *pro per* supplemental brief challenging the sufficiency of the evidence:

> Before a Defendant may be convicted of a Criminal Offence, due process requires that the prosecution introduce sufficient evidence to justify a rational trier of fact in [concluding] beyond a reasonable doubt that the Defendant was guilty of all the essential elements of the offence. *People v. Hampton*, 407 Mich. 354, 366 (1979); *Jackson v. Virginia*, 443 U.S. 307, 317 (1979); *In re Winship*, 297 U.S. 338 (1970).

(Ronald's *Pro Per* Supp. Brief, ECF No. 10-37, PageID.2274.)

Ronald plainly raised a sufficiency of the evidence challenge as a federal constitutional claim in state court.  These claims are therefore exhausted and properly preserved for a merits determination on federal habeas review.

## B

The clearly established federal law governing Ronald's sufficiency of the evidence claims is found in the line of Supreme Court decisions concerning the level of proof necessary to satisfy the Due Process Clause.  In *In re Winship*, 397 U.S. 358, 364 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every

11

fact necessary to constitute the crime with which he is charged." And in *Jackson*, *supra*, the Supreme Court determined that sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

The review of insufficiency of the evidence claims under the *Jackson* standard is especially deferential in the habeas context. In habeas proceedings, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict and a second to the decision by the state appellate court. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319) (emphasis in *Jackson*). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* When applying these two layers of deference, the Court's task is to "determine whether the [] Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the defendant] guilty beyond

a reasonable doubt based upon the evidence introduced at trial." *Id.* (emphasis in original).

**C**

**1**

The Michigan Court of Appeals addressed the sufficiency of the evidence supporting Ronald's conspiracy and assault convictions in a single short passage:

> Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Ronald guilty beyond a reasonable doubt. As discussed above, the drug raid at Ronald's house led to the seizure of $60,000. The victim-Cornelius Owens-testified that he began to hear rumors that defendants thought he was the snitch that led to the raid. He claimed that both defendants confronted him and called him a snitch. About a week after Cornelius confronted defendants at a fish fry, Cornelius was shot twice in the leg. Both Maurice and Cornelius identified Dyterius Roby as the shooter. The expert in cellular phone analysis testified that Roby's phone was around that location, and that Roby and Steven contacted each other several times before and after the shooting. There also was evidence that Ronald subsequently deposited money into Roby's jail account.

> Based on this evidence, the trial court did not err in finding that a rational jury could find Ronald guilty of assault with intent to commit great bodily harm less than murder and conspiracy to assault with intent to commit great bodily harm less than murder. While Ronald clearly prefers a different narrative and interpretation of the evidence, a directed verdict is viewed in favor of the prosecution. Moreover, "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v. Guthrie*, 262 Mich.

> App 416, 419; 686 NW2d 767 (2004) (quotation marks
> and citation omitted). This Court has repeatedly
> recognized that circumstantial evidence suffices as proof
> of the elements of an offense, and in particular an actor's
> intent. Id. In light of the foregoing, the verdicts also were
> not against the great weight of the evidence, as a
> miscarriage of justice would not result if the verdicts were
> to stand. Cameron, 291 Mich. App at 617.

*Owens,* 2014 WL 1401932, at *11.[3]  As explained below, this finding of sufficient

evidence involved an unreasonable application of the *Jackson* standard.

## 2

The Court turns first to the Michigan Court of Appeals' conclusion that the

prosecution presented sufficient evidence to support the assault with intent to

commit great bodily harm less than murder conviction.   Because the *Jackson*

standard "must be applied with explicit reference to the substantive elements of the

criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, the Court

begins its analysis by setting forth the elements of Ronald's assault conviction under

Michigan law.

---

[3] These issues are addressed in the Michigan Court of Appeals' opinion under the heading: "Directed Verdict & Great Weight of the Evidence."  Later in the opinion, the state court confirmed that this was its analysis under the Due Process Clause as well. *See Owens,* 2014 WL 1401932, at *22 n.18.

Ronald was convicted of the assault with intent to do great bodily harm charge on an aiding and abetting theory.[4] To secure a conviction on that theory under Michigan law, the prosecution had to prove beyond a reasonable doubt that (1) someone committed the assault, (2) Ronald performed or gave encouragement that assisted the commission of the assault, and (3) Ronald intended the commission of the assault or knew that the principal intended to commit the assault at the time he gave aid or encouragement. *See Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007), *citing People v. Carines,* 597 N.W.2d 130, 135 (Mich. 1999). The state appellate court reasonably found sufficient evidence that someone committed the assault – indeed, that element was not seriously disputed – but unreasonably found sufficient evidence that Ronald aided or assisted the assault.

As support for the conclusion that the prosecution presented sufficient evidence that Ronald aided the assault, the state appellate court cited the following evidence:

- Police seized $60,000 from Ronald's home during a drug raid;

---

[4] That Ronald was convicted of assault with intent to do great bodily harm less than murder under an aiding and abetting theory is evident from the fact that Ronald was not present at the time of the shooting, the trial court instructed the jury on the elements of guilt under an aiding and abetting theory, (*see* ECF No. 10-31, PageID.1983), and, during closing arguments, the prosecutor argued Ronald's guilt as an aider and abettor. (*See id.*, PageID.1949.)

- Cornelius (the victim) thought that Ronald and Ronald's brother Steven believed Cornelius was the snitch behind the raid;

- Cornelius was shot approximately one week after he confronted Ronald and Steven at a neighborhood fish fry;

- Roby (the shooter) and Steven contacted each other several times before and after the shooting; and

- Ronald deposited money in Roby's jail account after the shooting and after Roby had been arrested.

This evidence supports, at most, "reasonable speculation" that Ronald aided or encouraged the assault. *Newman v. Metrish*, 543 F.3d 793, 797 (6th Cir. 2008). But "reasonable speculation" is insufficient as a matter of law to support Ronald's aiding and abetting conviction. *Id.* (holding that "reasonable speculation" is not "sufficient evidence" under *Jackson*.)

First, the seizure of a large amount money from Ronald's home during a drug raid says nothing about whether Ronald actually played any role in the later assault on Cornelius. The seizure of the funds *may* have given Ronald a motive to harm *someone* – *i.e.*, a desire to harm the person or persons who gave police the information that led to the search – but the seizure itself is not evidence that Ronald had a motive to harm Cornelius in particular. More importantly, even if the seizure gave Ronald a motive to harm Cornelius, the seizure is plainly not evidence that Ronald actually participated in or supported the assault on Cornelius.

Second, the evidence that Ronald believed that Cornelius was the snitch was mere conjecture. This evidence came from Cornelius. He testified that at one point before he was shot, he was walking past Ronald when Ronald said, "don't speak to the wire." (6/23/11 Trial Tr. at 26, ECF No. 10-23, PageID.1457.) But Cornelius admitted that Ronald's statement was directed to *someone else* and that Cornelius simply *assumed* Ronald was accusing him (Cornelius) of being a snitch:

> [A]s I was walking to the store, I was walking past Steve and Bae-Bae [Petitioner]. Actually, it was more than just them two out there, and Bae-Bae yelled out his mouth don't speak to the wire, but *he was talking to Bows,* which is Maurice's brother, *but I took it as he was talking to me* and I snitched out the air, and one thing led to another.

(*Id.*; emphasis added.) Thus, the evidence that Ronald believed that Cornelius was the snitch is far from persuasive. Just as importantly, even if there was strong evidence that Ronald believed that Cornelius was the snitch, that evidence would establish, at most, that Ronald had a motive to assault Cornelius; it would not be any proof that Ronald actually aided such an assault.

Third, Cornelius was not shot one week after he confronted Ronald and Steven at a neighborhood fish fry, as the state court erroneously concluded. Instead, Cornelius and his associates (Reginald Fillmore and Anthony Hunt) drove to the fish fry, walked toward the Owens brothers, and pointed their guns at *Steven*, not

Ronald.[5] (*See* 6/17/11 Trial Tr. at 69-70, ECF No. 10-20, PageID.1274.) Then, after Cornelius, Fillmore, and Hunt left, *Steven*, in an expletive-laden tirade, said that something had to be done about Cornelius and that Cornelius had to be dealt with. (*Id.* at 73-74, ECF No. 10-20, PageID.1275.) Ronald was nothing more than a bystander to this confrontation. He did not speak, did not participate, hung back from the three men and his brother, and left within two to three minutes of Cornelius's departure. (*See* 6/21/11 Trial Tr. at 8-10, 44-45, ECF No. 10-21, PageID.1302, 1311.) And even if the interaction at this fish fry could be considered some evidence that Ronald may have had some motive to harm Cornelius, it is not evidence that Ronald actually acted on that motive.

Fourth, evidence that Roby (the shooter) and Steven spoke several times by phone before and after the shooting is not probative of whether *Ronald* played any role in the assault. There was no evidence that Ronald participated in those calls, knew what was being discussed on the calls, or had any connection whatsoever to the calls. Nor was there any evidence as to the content of the calls. Under these circumstances, the fact that Steven spoke to Roby before and after the shooting is

---

[5] There is some conflicting testimony as to when the guns were drawn. Cornelius claims the guns were only drawn when he, Fillmore, and Hunt believed that Steven was reaching for a gun (Cornelius later realized Steven had been reaching for his cell phone). Maurice Harris, a witness to the confrontation, testified that the three men jumped out of a truck with their guns already drawn. The precise moment when the men showed their weapons is irrelevant to the Court's analysis of this issue.

not evidence that Ronald, himself, had any connection to the shooting. Indeed, the state court did not even try to draw a connection between these calls and Ronald's guilt.

That brings us to the last piece of evidence cited by the state appellate court as evidence of Ronald's guilt: the testimony that Ronald twice deposited small amounts of money – $50 on one occasion and $60 on a second occasion – in Roby's jail account after Roby was arrested for the shooting.[6] (*See* 6/29/11 Trial Tr. at 188-92; ECF No. 10-26, PageID.1674-1675.) The state court seemed to conclude that this evidence, when construed in favor of the prosecution, could support an inference that Ronald had hired Roby to commit the shooting and was paying Roby for completing the job. That is an unreasonable inference that rests upon too much speculation. The state court did not identify any evidence that before the shooting Ronald had *any* communication (directly or through others) with Roby about assaulting Cornelius nor any evidence that Ronald had any advance knowledge that Roby was going to assault Cornelius. Moreover, neither the fact nor amount of the deposits was unusual. Indeed, several other individuals made similar deposits into

---

[6] It appears that someone named Ronald W. deposited $80 into Roby's account on another occasion. On direct appeal, the prosecution assumed that "Ronald W." was Ronald Owens. But no testimony directly supported that conclusion. Nevertheless, even if Ronald deposited an additional $80 in Roby's account, that fact would not alter the Court's analysis or conclusion.

Roby's jail account after the shooting. For example, Michelle Baker deposited $109; P. Worthington deposited $80; and D. Redeemer deposited $90. (*See id.*) In addition, the inmate financial records show that Roby spent at least $800 in the commissary during the relevant time period, (*see id.*), and that suggests that still other people were making deposits into his account. Furthermore, Ronald and Roby had a relationship prior to Roby's incarceration – they were members of the same gang – and thus there is a reasonable alternative explanation as to why Ronald offered support to Roby while Roby was in custody. (*See* 6/24/11 Trial Tr. at 14, ECF No. 10-24, PageID.1515.) On this record, it was mere conjecture for the state court to conclude that Ronald's post-shooting deposits into Roby's jail account reflected a *pre*-shooting agreement between Ronald and Roby that Roby would shoot Cornelius on Ronald's behalf.

In any event, even if the state court properly concluded that the deposits were at least some evidence of a pre-shooting agreement, the court's finding of sufficient evidence would still be unreasonable. Simply put, that evidence, and the weak evidence of Ronald's alleged motive described above, was plainly insufficient to support Ronald's conviction of aiding and abetting the shooting of Cornelius.[7]

---

[7] As described below, the prosecution proved beyond a reasonable doubt that Ronald attempted to bribe Cornelius to recant his (Cornelius') identification of Roby as the person who shot him. The Michigan Court of Appeals did not include that misconduct by Ronald in the list of evidence that supported Ronald's assault and conspiracy convictions. This Court agrees with the Court of Appeals that Ronald's

The Sixth Circuit Court of Appeals has held similarly meager evidence insufficient on habeas review. In *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), the Sixth Circuit held insufficient evidence was presented to prove the petitioner guilty beyond a reasonable doubt of aiding and abetting a carjacking. The petitioner was present at a gas station when the carjacking occurred. *See id.* at 349. The man who committed the carjacking exited the petitioner's car just before taking the victim's car at gunpoint. *See id.* The victim testified that the petitioner stared at the victim from his car while the carjacker fired shots and drove the victim's vehicle away. *See id.* The petitioner then attempted to drive off, but his tires skidded in the snow and the victim approached him, punched the petitioner in the face through the car window, and pulled the petitioner out of the car. *See id.* The victim drove the petitioner's car to the police station to file a report. The petitioner never attempted to retrieve his car from the police station. *See id.* At trial, the prosecutor argued that the petitioner acted as a lookout and potential getaway driver for the gunman, who was never located. *See id.*

---

efforts to undermine the prosecution of Roby for shooting Cornelius is not meaningful evidence that Ronald participated in, or had any connection to, the shooting. Simply put, that Ronald did not want Roby to be convicted of the shooting says little, if anything, about whether Ronald played any role in the shooting. And even if Ronald's efforts to derail the prosecution of Roby were some evidence connecting him to Roby's shooting of Cornelius, that evidence, when coupled with the other weak evidence against Ronald described above, would still be insufficient as a matter of law to support Ronald's assault and conspiracy convictions.

The Sixth Circuit found this evidence insufficient to support the petitioner's conviction:

> Although the state relies on evidence demonstrating that Brown 'stared at the victims,' never pumped gas at the gas station, attempted to flee following the gunshots, and failed to contact the police to retrieve his car, none of this evidence suggests that Brown assisted or encouraged the gunman in the commission of the armed robbery and carjacking or that Brown intended for the gunman to commit the offenses – both necessary elements for aiding and abetting under Michigan law.

*Id.* at 353.

Ronald's conviction for assault is based on evidence at least as thin as that in *Brown,* if not thinner. While there is no doubt that circumstantial evidence by itself may support a conviction, *see Hill v. Mitchell,* 842 F.3d 910, 933 (6th Cir. 2016), the circumstantial evidence in this case is nothing more than "conjecture camouflaged as evidence." *Piaskowski v. Bett,* 256 F.3d 687, 693 (7th Cir. 2001). The state court's affirmance of Ronald's assault conviction was an unreasonable application of Supreme Court precedent.

## 3

The Michigan Court of Appeals' conclusion that the prosecution presented sufficient evidence to support Ronald's conspiracy conviction was equally unreasonable. A conspiracy under Michigan law is "a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the

commission of a criminal offense." *Owens,* 2014 WL 1401932, at *10, quoting *People v. Jackson,* 808 N.W.2d 541, 547 (Mich. App. 2011) (quotation marks and citation omitted in *Owens*). "A twofold specific intent is required for conviction: the intent to combine with others, and the intent to accomplish the illegal objective." *People v. White*, 383 N.W.2d 597, 599 (Mich. App. 1985).

The Michigan Court of Appeals relied upon the same evidence to support Ronald's conspiracy conviction as it did to support his assault conviction. Just as that evidence was insufficient for the assault conviction, it is insufficient to support the conspiracy conviction. As described in detail above, the evidence against Ronald established, at most, that he may have had a motive to harm Cornelius and that he deposited funds into Roby's account after the shooting. For all of the reasons explained above, it was unreasonable for the state court to conclude that this evidence, even when construed in the light most favorable to the prosecution, was sufficient to establish that Ronald engaged in any joint criminal activity with Roby. The Michigan Court of Appeals' conclusion to the contrary was an unreasonable application of *Jackson*.

## 4

The obvious question here is: how could the jury have convicted Ronald of assault and conspiracy if, as the Court has concluded, the prosecution's evidence on those charges fell far below proof beyond a reasonable doubt? The Court sees two

possible answers to that question. First, the state trial court allowed the admission of evidence that Ronald was a drug-dealing gang member who committed other acts of violence and was possibly involved in an arson. (*See e.g.*, 6/21/11 Trial Tr. at 26, 166-67, ECF No. 10-21, PageID.1306, 1341; 6/23/11 Trial Tr. at 27-28, ECF No. 10-23, PageID.1457; 7/7/11 Trial Tr. at 104, ECF No. 10-30, PageID.1917.) The admission of that evidence (while not warranting habeas relief for the reasons explained below) may well have prejudiced the jury against Ronald and interfered with the jury's ability to fairly evaluate the evidence against Ronald. Second, the prosecution often treated Ronald and his brother Steven as a single, indivisible unit, and that may have contributed to confusion among the jurors. Indeed, that tactic appears to have confused the state appellate court which, as described above, attributed conduct involving only Steven to Ronald. In the end, the Court cannot be certain *why* the jury was led astray, but it is certain that the jury *was* led astray – and that the jury returned a verdict on the assault and conspiracy charges that is plainly not supported by sufficient evidence. Accordingly, the Court will vacate those convictions.

## IV

Ronald also argues that there was insufficient evidence to support his convictions of (1) bribing, intimidating, or interfering with a witness in a criminal case and (2) inciting or procuring perjury. Ronald claims that the state trial court

erred when it denied his motion for a directed verdict on those charges, that the verdict on those charges was against the great weight of the evidence, and that insufficient evidence supported the convictions on those charges. The great weight of the evidence claim is a matter of state law, and it is not cognizable on federal habeas review. *See*, *e.g.*, *Brown v. Winn*, 2018 WL 5619601, at *2 (6th Cir. Sept. 12, 2018). Likewise, to the extent that the directed verdict claim rests on state law, that claim too is not cognizable on federal habeas review. *See King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001). The sufficiency of the evidence challenge (and the directed verdict challenge to the extent that it relies on federal law), while cognizable, does not warrant habeas relief.

The Michigan Court of Appeals offered the following explanation as to why there was sufficient evidence to support Ronald's convictions for bribing, intimidating, or interfering with a witness in a criminal case and for procuring perjury:

> In regard to bribing, intimidating, and interfering with a witness in a criminal case and inciting or procuring one to commit perjury, the trial court also did not err in denying Ronald's motion for a directed verdict. Evidence was presented that Roby shot Cornelius, and that Cornelius knew defendants were responsible. After implicating Roby, Cornelius testified that both defendants approached him and offered him money and cocaine in exchange for lying about who shot him. Ronald even accompanied Cornelius to meet with Roby's attorney, where Cornelius recanted his identification of Roby. Cornelius estimated that with the cash and cocaine, he received $4,000 from

> defendants. The jury also heard a taped telephone conversation between Cornelius and Steven, on which Steven was coaching Cornelius to testify in court about his confusion regarding the shooter's identity.
>
> Therefore, viewed in the prosecution's favor, a rational trier of fact could have found that Ronald knowingly attempted to incite or procure Cornelius's perjured testimony and that he bribed, intimidated, or interfered with Cornelius in a criminal case. Also, in light of the overwhelming evidence of Ronald's guilt, the verdicts were not against the great weight of the evidence. *Cameron*, 291 Mich. App at 617.

*Owens*, 2014 WL 1401932, at ** 10-12.

The evidence described by the Michigan Court of Appeals was more than sufficient to support Ronald's convictions for bribing, intimidating, or interfering with a witness in a criminal case and for procuring perjury. The prosecution's theory underlying those convictions was that Ronald bribed Cornelius in order to persuade Cornelius to testify that Roby was not the shooter. The elements of bribing a witness are: (1) a person was testifying, or was going to testify, or was going to provide information at an ongoing or future official proceeding; (2) the defendant gave, offered to give, or promised to give anything of value to the testifying person, and (3) when the defendant gave, offered to give, or promised to give something of value to the testifying person, the defendant intended to discourage the testifying person from attending the proceeding, testifying at the proceeding, or giving information at the proceeding, or intended to influence the testifying person's testimony at the

proceeding. *See* Mich. Crim. JI 37.3; Mich. Comp. Laws § 750.122(1). The elements of inciting or procuring perjured testimony are: (1) the defendant did or said something to persuade another person to make a false statement under oath (it is immaterial whether anyone actually made a false statement under oath; the crime is complete as soon as the defendant tries to persuade another to make a false statement); (2) the defendant knew the statement was false at the time; and (3) that the oath was authorized or required by Michigan state law. *See* Mich. Crim. JI 14.4; Mich. Comp. Laws § 750.425.

The evidence described by the state court easily established all of the elements of both offenses. Thus, the state court did not unreasonably apply the *Jackson* standard when it affirmed Ronald's convictions for interfering with a witness and procuring perjury. The Court therefore declines to grant Ronald habeas relief on those two convictions.

## V

The Court now turns to Ronald's remaining claims for relief. Ronald asserts that he is entitled to habeas relief with respect to all of his convictions on several

27

different grounds.[8]  The Court will review each in turn.[9]

## A

Ronald asserts that he was denied a fair trial when the state trial court allowed evidence of his drug and gang involvement.  The Michigan Court of Appeals considered this claim on direct appeal and held that the testimony was properly admitted:

> The *res gestae* doctrine provides that a jury is entitled to hear the complete story of the crime.  *People v. Aldrich*, 246 Mich. App 101, 115; 631 NW2d 67 (2001).  … This concept relies on the principle that background information is often necessary to provide the jury the proper context in which to evaluate the evidence.  *People v. Malone*, 287 Mich. App 648, 661; 792 NW2d 7 (2010). In other words, the more the jurors know about the full transaction, the better equipped they are to uphold their sworn duty. *Id.*  (quotation marks and citation omitted). …

\*\*\*

---

[8] Ronald attacks all four of his convictions on the remaining grounds.  The Court has already concluded that he is entitled to relief on his assault and conspiracy convictions based upon insufficiency of the evidence.  But for the sake of judicial efficiency, the Court has considered whether Ronald is entitled to relief from those convictions based upon the arguments presented in his additional claims.

[9] Respondent argues that many of Ronald's claims are barred from review because they are procedurally defaulted.  Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Court finds it is more efficient to proceed to the merits of Ronald's remaining claims and does so here.

Thus, "[e]vidence of other criminal acts is admissible when it explains the circumstances of the crime." *Malone*, 287 Mich. App at 662.

In the instant case, there was a drug raid at Ronald's house in February 2009, where the police confiscated drug residue and $60,000. In a subsequent raid, the police discovered additional money and crack cocaine. Cornelius and the defendants had been a part of the same gang, the Geto Doggs Gang, but after the February raid and the Prison Talk DVD, their relationship changed. Cornelius began to hear rumors that he was the snitch that led to the February raid at Ronald's house. Cornelius claimed that Steven confronted him and called him a snitch, and that Ronald yelled out "don't speak to the wire," which was a reference to Cornelius being a "snitch," "rat" or the "police."

About a week after this incident, Cornelius was shot. Both Maurice and Cornelius identified Dyterius Roby as the shooter. An expert in the field of forensic cellular analysis testified that at the time of the shooting, Roby's phone was around that location. The expert further explained that Roby initiated direct connect contact with Steven several times that day, both before and after the shooting. After Roby was arrested, Ronald repeatedly deposited money into Roby's prison account.

As seen from the recitation of the evidence, the jury was called upon to decipher what occurred during private conversations between defendants and Roby, and the resulting decision to act. *See Sholl*, 453 Mich. at 742 ("In this case, a jury was called upon to decide what happened during a private event between two persons."). Without understanding the context--that defendants were part of the same gang as Cornelius and perceived him to be the snitch that led to the exposure of their drug business and the loss of over $60,000–the jury would have been left without the complete story. *Aldrich*, 246 Mich. App. at 115. "It would have been perplexing to the jury" to know

that Roby-with whom Cornelius had a good relationship-shot him without any apparent provocation. *Id.* The fact that defendants were in the same gang as Cornelius illuminated their relationship, and helped to explain why they reacted so strongly after thinking he was the snitch. Further, their belief that Cornelius exposed their drug business and cost them $60,000 "explains the circumstances of the crime." *Malone*, 287 Mich. App. at 662; *Bostic*, 110 Mich. App. at 749.

\*\*\*

Alternatively, this evidence was relevant and admissible under MRE 404(b).

\*\*\*

Under MRE 404(b), inadmissible character evidence can be deemed relevant and admissible if it is offered for a purpose other than propensity. MRE 404(b)(1) provides: "Evidence of other crimes, wrongs, or acts" may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." …

Here, this evidence was admissible for the non-character purposes of motive. The prosecutor sought to prove the motive for the shooting stemmed from defendants' belief that their fellow gang member had snitched on them, which resulted in exposure and a police drug raid that cost them $60,000. Thus, evidence of their lucrative drug business and the gang relationship between the victim and defendants provided the factual context to understand an otherwise inexplicable act, which helped to establish motive.[ ]

Furthermore, this evidence was relevant under MRE 401 and 402. … Evidence that defendants believed their fellow gang member had snitched on them and crippled their drug business makes it more probable that defendants were guilty of the charged offenses. Moreover, MRE 403 did not preclude the admission of such evidence. While this evidence was prejudicial, "[a]ll relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded. …" *People v. McKee*, 268 Mich. App. 600, 6130614; 709 N.W.2d 595 (2005) (citation omitted). As noted above, this evidence had significant probative value as it illuminated the motive behind the crimes and the identity of the perpetrators. Furthermore, the evidence of gang membership and drug dealing was relatively restrained, as no evidence was admitted regarding drug buys or irrelevant gang-related behavior. Thus, unfair prejudice did not result.[ ]

Therefore, this evidence was admissible as *res gestae* and pursuant to MRE 404(b). Furthermore, "the trial court's decision on a close evidentiary question ... ordinarily cannot be an abuse of discretion." *People v. Sabin*, 463 Mich. 43, 67; 614 N.W.2d 888 (2000). Defendants are not entitled to relief.

*Owens*, 2014 WL 1401932, at ** 3-5.

The admission of this objected-to prior acts evidence is a question of state law. *See Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). Federal habeas relief is not available to correct state-court evidentiary decisions unless they rise to the level of a violation of the Due Process Clause, *see Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001), which they cannot do unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 U.S. 197, 201-02 (1977). Ronald fails to

show that the state court's evidentiary rulings were so egregious as to constitute a violation of the Due Process Clause. Ronald is therefore not entitled to habeas relief on this claim.

## B

Ronald next argues that the state trial court erred when it admitted testimony from police officer Jason Ball, who was qualified as an expert in forensic cellular phone analysis. Officer Ball testified that Roby's cell phone was in the vicinity of the shooting at the time of the shooting and that calls were made to Steven before and after the shooting. Ronald argues that Officer Ball's testimony was based upon "junk science," (Pet., ECF No. 1, PageID.62), and that Officer Ball was not a neutral expert because he was employed by the police department.

The Michigan Court of Appeals considered this claim on direct review and rejected it because "there was sufficient testimony for the trial court to conclude that [Officer Ball] had the training and experience to provide the jury with useful, scientific, or specialized knowledge." *Owens*, 2014 WL 1401932, at *9. The state appellate court also rejected Ronald's claim that Officer Ball's conclusions were faulty because they were based upon data from only one cellular tower and the claim that Officer Ball was biased because he worked with the police department. *See id.* Ronald fails to show that the state court's conclusion that Officer Ball's testimony

was admissible violated the Due Process Clause and offended a fundamental principle of justice.

Moreover, to the extent that Ronald raises a "*Daubert*" claim with respect to the admission of Officer Ball's testimony, it is without merit. In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court set forth factors that courts should consider when admitting expert testimony. But the Sixth Circuit has held that *Daubert* cannot provide a basis for federal habeas relief because *Daubert* concerns the Federal Rules of Evidence which are not relevant to a state criminal conviction. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998), *cert. denied*, 525 U.S. 935 (1998). For all of these reasons, Ronald is not entitled to federal habeas relief due to the admission of Officer Ball's testimony.

## C

Ronald's second and fourteenth claims raise allegations of prosecutorial misconduct. More specifically, Ronald alleges that the prosecutor engaged in misconduct by eliciting testimony regarding Ronald's involvement with drugs and gangs and by knowingly presenting false and perjured testimony. Relatedly, Ronald argues that the state trial court erred when it failed to grant a mistrial based upon prosecutorial misconduct.

The Michigan Court of Appeals considered Ronald's claim that the prosecutor committed misconduct by eliciting testimony about the other-acts drug and gang-

related evidence and rejected it. It held that there was no misconduct by the prosecutor because the evidence was properly admitted under state law. *See Owens*, 2014 WL 1401932, at *15. The Michigan Court of Appeals' holding that the prosecutor did not commit misconduct by eliciting admissible testimony was not contrary to clearly-established federal law.

Second, Ronald argues that the prosecutor knowingly presented perjured testimony from Cornelius. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> In the instant case, Ronald highlights the changing testimony Cornelius provided throughout the instant proceedings and those involving Roby. Thus, Ronald concludes that Cornelius committed perjury, admitted to doing so, the prosecutor knew, and the trial court acted improperly in admitting Cornelius's testimony. However, this argument overlooks that at the time of trial, Cornelius claimed to be telling the truth although he admitted to lying previously. Thus, this is not an issue of perjury, but of credibility.
>
> "More importantly, there is no indication in the record that, even if [the witness] testified falsely, the prosecutor knew [the witness] would testify falsely." *People v. Herndon*, 246 Mich. App 371, 417; 633 N.W.2d 376 (2001). Additionally, defendants fully explored the credibility implications arising from Cornelius's changing testimony. The jury was free to disbelieve Cornelius's trial testimony. *See People v. Williams*, 268 Mich. App 416, 419; 707 N.W.2d 624 (2005) ("This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses.").

*Owens*, 2014 WL 1401932, at *23.

The Michigan Court of Appeals did not unreasonably apply clearly established federal law when it rejected this aspect of Ronald's prosecutorial misconduct claim. Prosecutors may not deliberately deceive a court or jurors by presenting evidence that they know is false. *See Giglio v. United States*, 405 U.S. 150, 153 (1972). A prosecutor also must not allow false testimony to go uncorrected when it appears. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). The Michigan Court of Appeals' finding that Cornelius's testimony raised a question of credibility, not perjury, is not contrary to, or an unreasonable application of, *Giglio* or *Napue*. Ronald is therefore not entitled to habeas relief on this claim.

Finally, Ronald claims that the state trial court erred when it failed to grant a mistrial under state law based on the prosecutor's alleged misconduct. Trial court errors in the application of state law or procedure are generally not grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Indeed, the Sixth Circuit has held that where a trial court erred in denying a mistrial under state law, that error did not provide a basis for federal habeas relief. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002). Ronald has not persuaded the Court that he is entitled to federal habeas relief on this alleged error of state law and/or procedure.

## D

In Ronald's third claim, he alleges that the state trial court erred when it refused to disqualify the Saginaw County Prosecutor's Office. Prior to trial, Ronald alleged improper *ex parte* communications between Judge William Crane and the assistant prosecutor Paul Fehrman, whose wife was Judge Crane's secretary. Ronald then moved to recuse Judge Crane based upon that relationship. Judge Crane, however, retired before trial and before the motion for recusal was decided, mooting the motion. Ronald also moved to disqualify the entire Saginaw County Prosecutor's Office based upon the alleged improper communications between Judge Crane and Fehrman and between Judge Crane and another assistant prosecutor, George Best. Judge Crane's successor, Judge Fred L. Bouchard, denied Ronald's motion to disqualify the Saginaw County Prosecutor's Office. Judge Bouchard concluded that there were no conflicts of interest and, further, that even if there had been a conflict of interest, the conflict was eliminated by Judge Crane's retirement. (*See* 6/8/11 State Court Order, ECF No. 10-36).

The Michigan Court of Appeals considered this claim on direct review and held that the state trial court properly denied the motion to disqualify the Saginaw County Prosecutor's Office:

> There are two common grounds that warrant disqualifying a prosecutor. First are situations where there is "a conflict of interest arising out of some professional, attorney-client relationship, as when the defendant is a former client of

the prosecuting attorney." *People v. Doyle*, 159 Mich. App. 632, 641; 406 N.W.2d 893 (1987). The second category involves "situations where the prosecuting attorney has a personal interest (financial or emotional) in the litigation, or has some personal relationship (kinship, friendship or animosity) with the accused." *Id.* at 641-642. Oftentimes, disqualification of the prosecutor under such circumstances is necessary to avoid even the appearance of impropriety. *Id.* at 642. If a court determines that the prosecutor must be disqualified, "the question then arises whether the entire prosecutor's office must be disqualified." *People v. Mayhew*, 236 Mich. App. 112, 126-127; 600 N.W.2d 370 (1999). Factors like whether the prosecuting attorney has supervisory authority over other attorneys in the office, or has policy-making authority, make it more probable that recusal of the entire office is likely. *Id.* MCL 49.160 provides that a prosecutor's office may be disqualified and a special prosecutor appointed if there is a "conflict of interest or [the prosecutor] is otherwise unable to attend to the duties of the office."

In the instant case, defendants levy serious allegations against prosecutor Paul Fehrman and Judge William Crane. The factual circumstances center on Judge Crane's secretary, Fehrman's wife, and the allegations that Fehrman was having *ex parte* communications with the Judge. Yet, Judge Crane retired. He was not the presiding judge for trial nor for the motion to disqualify the prosecutor's officer. As Ronald's counsel conceded at the December 13, 2010 hearing, and on appeal, the issue of recusing Judge Crane is "moot." While there may have been a conflict of interest or an appearance of impropriety between Fehrman and Judge Crane, it was based on a personal relationship that became irrelevant once Judge Crane retired.

Moreover, the prosecution denied that any improper *ex parte* communications occurred, and the trial court was free to find such disavowals credible. The prosecutor had

> no prior or existing relationship with the defendants, was not privy to any confidential information, nor did he have a personal, financial, or emotional stake in the proceedings. Also, as the trial court found, reassignment of the case to the Honorable Fred L. Borchard cured any potential conflict of interest.
>
> Therefore, the trial court properly denied defendants' motion to disqualify the entire prosecutor's office.

*Owens,* 2014 WL 1401932, at ** 9-10.

The Michigan Court of Appeals' decision was not unreasonable. Courts have recognized that an entire prosecutor's office will be disqualified only in the rarest of situations. *See*, *e.g.*, *United States v. Bolden*, 353 F.3d 870, 875 (10th Cir. 2003) ("[T]he disqualification of Government counsel is a drastic measure... [D]isqualifying an entire United States Attorney's office is almost always reversible error") (internal quotations omitted); *United States v. Caggiano*, 660 F.2d 184, 190-91 (6th Cir. 1981) (reversing the district court's decision to disqualify an entire United States Attorney's office where one of the attorneys in the office had served as defendant's defense lawyer during a previous case, on the same charges, that ended in a hung jury); *In re Harris County*, 240 F. App'x 644, 645-46 (5th Cir. 2007) (holding that the disqualification of an entire county prosecutor's office was improper and stating that such a sanction "must not be imposed cavalierly"). Ronald has not persuaded the Court that disqualification of the entire Saginaw County Prosecutor's Office was warranted here and he therefore fails to show that the

Michigan Court of Appeals' decision was an unreasonable application of clearly established federal law. Ronald is therefore not entitled to federal habeas relief on this claim.

**E**

In Ronald's seventh claim, he seeks federal habeas relief on the ground that the cumulative effect of trial errors deprived him of a fair trial and due process of law. A claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable on habeas review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011). Ronald is therefore not entitled to relief on this claim.

**F**

Ronald's eighth and twelfth claims arise out of his sentence. First, Ronald argues that the state trial court violated his rights under the Due Process Clause when it allegedly mis-scored Offense Variables 3, 4, 10, 13, 14, and 19. Ronald is not entitled to federal habeas relief on this claim because "[a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only" and is not a basis for federal habeas relief. *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003).

Ronald next claims that the state trial court erred when it sentenced him to 83 months to 15 years imprisonment for bribing, intimidating, or interfering with a

witness in a criminal case. But that claim too is not cognizable on federal habeas review because it challenges only the state court's interpretation of state sentencing law. *See id. See also Estelle*, 502 U.S. at 67.

## G

In Ronald's ninth claim, he argues that he was denied the effective assistance of trial counsel. Specifically, Ronald contends that his counsel's failure to move for severance, failure to advise him to testify on his own behalf, and failure to investigate and present a favorable witness constituted constitutionally deficient performance that prejudiced him. The Court disagrees.

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). Under AEDPA, the standard for obtaining relief under *Strickland* is difficult to meet because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations and quotation marks omitted).

Ronald first argues that his attorney was ineffective when counsel failed to move to sever Ronald's trial from that of Ronald's brother and co-defendant Steven. The Michigan Court of Appeals considered this claim on direct review and rejected it. It held that the trials were properly joined under the Michigan Court Rules, and

that Ronald's attorney was therefore not ineffective when counsel did not move to sever the trials. *See Owens*, 2014 WL 1401932, at *17.  An attorney does not render ineffective assistance by failing to file a motion that would have been denied. *See Jones v. Winn*, 2017 WL 6048865, *3 (6th Cir. 2017) (finding counsel was not ineffective in failing to file a motion for severance that likely would have been denied) (citing *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). Ronald's counsel was not ineffective for failing to file a futile motion to sever.

Second, Ronald argues that counsel was ineffective when counsel allegedly failed advise Ronald that he could testify on his own behalf.  Ronald claims to have been "dumbfounded" when the state trial court asked whether he would be testifying because Ronald says that his attorney had not previously discussed this with him. (ECF No. 1-1, PageID.169.)  However, the transcript of that interaction shows that when the trial court asked Ronald whether he would testify, Ronald affirmed that he had discussed whether to testify with his counsel and decided not to testify. (*See* 7/7/2011 Trial Tr. at 62-63, ECF No. 10-30, PageID.1906.)  The Michigan Court of Appeals considered this claim on direct review and rejected it. *See Owens*, 2014 WL 1401932, at *17.  Based upon this record, the Michigan Court of Appeals' decision was not unreasonable.

Finally, Ronald argues that his trial counsel was ineffective when counsel failed to investigate and call a woman named Sharina Parks as a defense witness.

The Michigan Court of Appeals considered this claim on direct review and rejected it:

> He claims that Parks would have testified that Ronald knew Cornelius was not the snitch, which would have been fatal to the prosecution's theory at trial. Yet, other than his bare assertion on appeal that Parks would have testified in his favor, he has presented no evidence to substantiate this claim. Moreover, as the United States Supreme Court has recognized, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, ... on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." *Strickland*, 466 U.S. at 691. There is no indication that defendant placed trial counsel on notice that Parks could offer any relevant information or that she should be interviewed.

*Owens*, 2014 WL 1401932, at *16.

The Michigan Court of Appeals' decision was not unreasonable. As in the state court proceeding, Ronald fails in this federal habeas proceeding to offer any evidence other than his own conclusory statement to show what Parks' testimony would have been had defense counsel called her as witnesses. Conclusory allegations of ineffective assistance of counsel, without evidentiary support, do not provide a basis for habeas relief. *See, e.g.*, *Workman v. Bell*, 1778 F.3d 759, 771 (6th Cir. 1998). Absent supporting evidence, Ronald cannot show that the state court's ruling denying this ineffective assistance of counsel claim was contrary to or an unreasonable application of clearly-established federal law.

## H

Ronald next alleges that the state trial court abused its discretion when it denied his motion to quash the criminal information as unsupported by probable cause. However, while "a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Thus, even if there was a lack of probable cause to support Ronald's pre-trial detention pursuant to the criminal information, that would not entitle Ronald to relief from any of his convictions. Ronald is therefore not entitled to federal habeas relief on this claim.

## I

Next, Ronald argues that his convictions violate the Double Jeopardy Clause. First, he claims that the assault with intent to commit great bodily harm less than murder and conspiracy to commit that offense violate double jeopardy because they arose out of the same conduct. This claim is rendered moot by the Court's decision that these convictions are not supported by sufficient evidence.

Ronald also claims that his convictions for inciting or procuring one to commit perjury and bribing, intimidating, or interfering with a witness in a criminal case violated the Double Jeopardy Clause. The Michigan Court of Appeals considered this claim on direct appeal and rejected it:

> [D]efendants' double jeopardy arguments are meritless.
> Assault with intent to do great bodily harm less than
> murder requires an attempt to do bodily harm with the
> intent to do great bodily harm less than murder, *Brown*,
> 267 Mich. App at 147, while conspiracy requires an
> agreement between two or more individuals to combine
> actions to effectuate a criminal offense, *Jackson*, 292
> Mich. App at 588. Thus, "each provision requires proof
> of a fact which the other does not." *Franklin*, 298 Mich.
> App at 546. Furthermore, inciting or procuring one to
> commit perjury is an attempt offense that requires proof
> only that a defendant knowingly attempted to procure
> perjured testimony, *Sesi*, 101 Mich. App at 270, which is
> significantly different than bribing, intimidating, or
> interfering with a witness in a criminal case, *see* MCL
> 750.122.

*Owens*, 2014 WL 1401932, at *20.

The Michigan Court of Appeals' decision was not unreasonable. The Court

ordinarily will defer to a state court's interpretation of state statutes. And in this

instance, the Court will defer to the Michigan Court of Appeals' holding that inciting

or procuring perjury and bribing, intimidating, or interfering with a witness are

different offenses with distinct elements. Ronald has therefore not established that

he is entitled to federal habeas relief on this claim.

## J

In his thirteenth claim, Ronald argues that he was denied his right to due

process by police misconduct. He claims that, after Cornelius recanted his

identification of Roby as the shooter, police improperly questioned Cornelius and

forced him to change his testimony. The Michigan Court of Appeals considered this

44

claim on direct review and rejected it. The state appellate court noted that police questioned Cornelius for only an hour and, although the questioning officer used strong language and raised the possibility of charging Cornelius with perjury, the state court found no prohibition against cautioning a witness about a perjury charge. *See Owens*, 2014 WL 140193, at *21.

The Michigan Court of Appeals' decision was not unreasonable and is supported by evidence in the record. Police detective Matt Gerow testified that, after Cornelius recanted his identification of Roby, Detective Gerow told Cornelius he believed that Cornelius had been threatened and also advised Cornelius that perjury was a felony charge. The jury was made aware of Cornelius' initial statement, his recantation, his meeting with Detective Gerow, and Cornelius' subsequent return to his original statement. The issue of Cornelius' credibility was properly in the hands of the jury. The Michigan Court of Appeals' decision that Detective Gerow's remarks to Cornelius did not amount to police misconduct was not contrary or an unreasonable application of Supreme Court precedent.

## K

In his fifteenth and sixteenth claims, Ronald argues that the state trial court erred when it instructed the jurors on the lesser included offense of conspiracy to commit assault with intent to do great bodily harm less than murder. He insists that

the offenses of conspiracy to commit first-degree murder and conspiracy to commit assault are incompatible because the latter lacks an element of premeditation.

The Michigan Court of Appeals considered this claim on direct review and denied relief:

> Defendants argue that the jury was improperly instructed on the lesser included offense of conspiracy to assault with intent to do great bodily harm less than murder. However, defendants requested the lesser included offenses. "[A]n appellant may not benefit from an alleged error that the appellant contributed to by plan or negligence." *People v. Witherspoon,* 257 Mich.App 329, 333; 670 NW2d 434 (2003).
>
> Furthermore, defendants' arguments are meritless. Defendants rely on *People v. Hamp,* 110 Mich.App 92, 103; 312 NW2d 175 (1981) to support their argument. Yet, *Hamp* stands for the proposition that "conspiracy to commit first-degree murder" does not include "the lesser offense of conspiracy to commit second-degree murder." *Id.* Defendants in the instant case were not charged with nor convicted of conspiracy to commit second-degree murder. Further, *Hamp* did not stand for the proposition that conspiracy to commit first-degree murder was impervious to lesser included offenses.
>
> Moreover, while defendants argue that conspiracy to commit first-degree murder and conspiracy to commit an assault with intent to do great bodily harm are "incompatible" because they do not require the same elements, that is the point of a lesser included offense, which often denotes a crime that has fewer elements to prove. Therefore, defendants' arguments are meritless. Further, neither defense counsel behaved objectively unreasonable based on the reasons defendants raise.

*Owens*, 2014 WL 140193, at *22.

On federal habeas review, a petitioner is entitled to relief only if a jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Ronald fails to show that his conviction violated the Due Process Clause or that the Michigan Court of Appeals' decision rejecting this claim was contrary to or an unreasonable application of clearly-established federal law. Ronald is therefore not entitled to federal habeas relief on this claim.

## VI

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that relief should be denied with respect to all of Ronald's claims

except the sufficiency of the evidence claims upon which the Court grants the petition in part. Therefore, the Court denies Ronald a certificate of appealability.

The standard for granting an application for leave to proceed *in forma pauperis* ("IFP") on appeal is a less demanding standard than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002), citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F.Supp.2d at 765. The Court concludes that Ronald could take an appeal in good faith. Ronald may therefore proceed *in forma pauperis* on appeal.

## VII

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Ronald's petition for writ of habeas corpus. The Court **GRANTS** an unconditional writ of habeas corpus with respect to Ronald's convictions for conspiracy to assault with intent to do great bodily harm less than murder and assault with intent to do great bodily harm less than murder on the sole

basis that the convictions were not supported by sufficient evidence. These convictions shall be and are vacated on that ground.

The Court **DENIES** habeas relief with respect to Ronald's remaining claims.

The Court **DECLINES** to issue a certificate of appealability, but it **GRANTS** leave to appeal *in forma pauperis*.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764